IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUISE I. TEUPELL,

       Plaintiff,

vs.                           Civ. No. 99-1223 JC/DJS

KENNETH S. APFEL,
Commissioner of Social Security,

       Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

1. Plaintiff invokes this Court's jurisdiction under 42
U.S.C. §405(g), seeking judicial review of a final decision of the
Commissioner of the Social Security Administration (Commissioner).
The Commissioner determined that Plaintiff is not eligible for
disability insurance benefits.  Plaintiff moves this Court for an
order reversing the Commissioner's final decision or remanding this
matter for a rehearing.  The Court will review the Commissioner's
decision to determine whether the Commissioner's findings are
supported by substantial evidence and whether the Commissioner
applied correct legal standards in making his findings.  <u>Williams</u>

---

[1] Within ten (10) days after a party is served with a
copy of these proposed findings and recommendations, that party
may, pursuant to 28 U.S.C. Section 636(b)(1), file written
objections to such proposed findings and recommendations.  A
party must file any objections with the clerk of the district
court within the ten day period allowed if that party seeks
appellate review of the proposed findings and recommendations.
If no objections are filed, no appellate review will be allowed.

v. Bowen, 844 F.2d 748 (10th Cir. 1988).

## Administrative History

2.     Plaintiff applied for Disability Benefits and Supplemental Security Income (SSI) on October 25, 1993 and November 16, 1993 alleging a disability since June 15, 1993.  Tr. 22-24.  These applications were denied initially and on reconsideration. Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ) on May 18, 1995.  Plaintiff filed an application for widow's benefits on May 25, 1995.   This application was expedited so that it was included in the ALJ's decision.  The ALJ denied all benefits.   The Appeals Council upheld the ALJ decision.  Tr. 4-5.    A Complaint was timely filed with the United States District Court on September 3, 1996.   The Magistrate's Judges' Proposed Findings and Recommended Disposition was filed October 20, 1997.  Tr. 160-172.  Plaintiff's case was remanded to the ALJ on January 15, 1998.  A hearing was held on April 27, 1998. The ALJ found that Plaintiff was not disabled.   Tr. 24.   The Appeals Council denied Plaintiff's request for review.  Tr. 4.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

## Statement of the Facts

3.     Plaintiff alleges a disability due to back problems. Plaintiff was 49 years old at the time of her application in November of 1996.  She has a GED and has past work experience as a

2

data transcriber.

**Issues**

4.   Plaintiff alleges the ALJ erred because the substantial evidence does not support the ALJ's decision and his decision is contrary to law.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the

Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

4

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id.  If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all

relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10. The Social Security Act defines "physical or mental impairment" as an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3). There is substantial evidence in the record to support the ALJ's findings that Plaintiff did not meet her burden of proving that she was disabled *per se* and that Plaintiff was able to perform her past sedentary job. A finding of disability requires more than the inability to work without pain. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

11. Plaintiff argues that she met Listings of Impairment 1.05C. Social Security regulations describe the disabilities in the Listing of Impairments as "impairments which are considered severe enough to prevent a person from doing any gainful activity." Knipe v. Hecker, 755 F.2d 141, 145 (10th Cir. 1998); 20 C.F.R. Section 404.1525(a)(1982). Plaintiff has the burden of proving that her

6

condition satisfies all the criteria of an impairment listed in Appendix 1 of the Regulations.  Subjective complaints alone are not sufficient.  See Sullivan v. Zebley, 493 U.S. 521, 534 n. 14 (1990). Thus, to meet Section 1.05C Plaintiff must show that she has a vertebrogenic disorder such as a herniated nucleus puplosus or spinal stenosis with all of the following persisting for 12 months: pain, muscle spasm, significant limitation of motion of the spine, significant motor loss, muscle weakness, sensory loss and reflex loss.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 Sec. 1.05C.

12.   A review of the record clearly shows that Plaintiff's condition does not meet all the medical criteria of Sec 1.05C for 12 months.   Plaintiff complained of back pain since at least 1991. However, she was still capable of working.  Tr. 53-57. The evidence after June 15, 1993, her alleged disability onset date, shows that Plaintiff had a back operation in September 1993 and removal of the screws in May of 1994.  Tr. 45, 46.  An MRI in June of 1994 did not reveal any disc herniation at any level.  Tr. 50.  During an examination by her treating physician, Dr. Pettersson there was no paraspinous muscle spasm; she had normal movement of the spine; deep tendon reflexes were normal and equal and there was no evidence or sensory or motor deficit.  Tr. 43.  Similar results were found in January of 1995 in an examination by Dr. Sidney Schultz, an orthopedic surgeon.  At that time Plaintiff walked without a limp; she could bend forward with her knees straight.  Further most motions could be performed without any complaints of pain other than

extremes.  Plaintiff's reflexes were equal and active; there was no muscle weakness, sensation was intact and there was no muscle atrophy.  Tr. 47-48.  Dr. Schultz further stated in his report that Plaintiff's discomfort was from a spinal fusion that was not solid.  Tr. 50.  He also noted that there was no evidence of lumbar radiculopathy and that an MRI taken June 1994 showed no disc herniation at any level.  Dr. Schultz recommended that Plaintiff was in need of a "definite weight reduction program" as well as a mild range of motion exercise program.  He left work as an issue open for "future trial and observation."  Id.  Plaintiff's reliance is misplaced.  The ALJ was correct in determining that these findings do not support a finding that Plaintiff is unable to work.

13.  Plaintiff relied, in part, on evidence in the record that is not considered "acceptable medical sources." Though this evidence may be considered, it cannot provide or substitute for the medical evidence required to prove a disability.  42 U.S.C. Sec. 423(d)(3) and 20 C.F.R. Sec. 404.1527.

14.  Plaintiff also argues that she meets Listing of Impairment 4.02B which is a cardiovascular system impairment.  This impairment requires "[d]ocumented cardiac enlargement by appropriate imaging techniques..or ventricular dysfunction manifested by S3, abnormal wall motion, or left ventricular ejection fraction of 30 percent or less by appropriate imaging techniques..." 20 C.F.R. Part 404 Subpart P, Appendix 2, Sec. 4.02B.  This issue was addressed by Dr. Allen Heaman specifically who stated that she did not meet any of

these criteria.  Tr. 134.  A review of the records do not indicate
otherwise.  The record does not contain the required medical tests,
including an exercise test or the catherization.  Further, Dr.
Heaman noted that Plaintiff had a normal left ventricle during
testing on March 18, 1999. Id.

15.  Plaintiff argues that the ALJ failed to assess the
Plaintiff's impairments in combination.  The ALJ evaluated the whole
record.  He analyzed the medical findings Plaintiff's daily
activities, and Plaintiff's testimony.  The ALJ specifically
discussed Plaintiff's limitations and the medical evidence in the
record.  Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).
("To require a more elaborate articulation of the ALJ's thought
processes would not be reasonable." (Citations omitted).

16.  Plaintiff appears to argue that the ALJ did not rely on
the opinions of her treating physicians.  This is not the case.  The
opinions of her treating physicians support the finding that
Plaintiff has the residual functional capacity (RFC) to perform work
which does not require her to sit longer than 30 minutes at a time,
stand longer than one hour at a time, or lift more than a gallon of
milk (8 pounds) with each hand.  Tr. 151.  The Plaintiff reported
that one of her treating physicians, Dr. Mital only limited her
bending and lifting activities.  Tr. 38.  Another treating
physician, Dr. Heaman, noted that Plaintiff had difficulty standing,
walking or siting for long periods of time.  Tr. 133.  In completing
a RFC form in April of 1998 Dr. Heaman found that the Plaintiff's

9

ability to sit, stand, reach, grasp and do fine manipulation were not limited.  Tr. 196.  He further found that Plaintiff could lift up to 10 pounds, which is consistent with the sedentary lifting requirements.  Tr. 197.  There are inconsistencies in this report which the ALJ specifically and properly addressed.  See Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1977).  Basically, the facts stated by the physician indicate Plaintiff can do sedentary work.  His conclusion however is that she cannot.  Any conclusions not supported by specific findings are properly rejected by the ALJ.  See Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994).

17.  A vocational expert testified at the administrative hearing that Plaintiff's past sedentary job, either as she performed it or as it is performed in the national economy, could be performed even if Plaintiff could not sit longer than 30 minutes at a time, standing longer than one hour at a time, or lift more than a gallon of milk with each hand.  Tr. 259.  These are precisely the limitations Plaintiff admitted she had when she was examined by Dr. Allen in March of 1998.  Tr. 189.

18.  Finally, Plaintiff argues that the ALJ erred in not considering her alleged stress incontinence on her ability to work.  However, Plaintiff did not meet her initial burden of proving a "medially determinable" impairment.  42 U.S.C. Sec. 423(d)(1)(A).  There are no medical or clinical tests to document this impairment.  Further it appears that this alleged impairment may be controlled as

she wears a pad.   Thus, this alleged impairment does not provide a basis for an award of disability benefits.   <u>See</u> <u>Pacheco v. Sullivan</u>, 931 F.2d 695, 698 (10th Cir. 1991).   The ALJ's finding that this alleged impairment was "not severe", is supported by the substantial evidence.

### Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
**Don J. Svet**
**United States Magistrate Judge**